IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVE YOUNG and EUN YOUNG,

        Plaintiffs,

v.                                                      Case No. 6:14-cv-01154-JTM

KI OK SON, Individually,
HYE JIN SON a/k/a HYE JIN HA, Individually, and
ACROSS CONSTRUCTION CORPORATION,

        Defendants.

**MEMORANDUM AND ORDER**

This matter came before the court on June 13, 2017, for a bench trial. At the conclusion of the evidence, the court granted the parties additional time to brief their respective positions. Those briefs have now been filed and the court is prepared to rule.

**I. Introduction.**

The plaintiffs Steve Young and Eun Young are husband and wife. The defendants Ki Ok Son (referred to as "Jack Son") and Hye Jin Son ("Hye") are also husband and wife. Hye is the sister of Steve, meaning Steve and Jack are brothers-in-law.

As will be discussed more fully herein, the evidence at trial focused on two events. The first involved Steve giving a $215,000 check to Jack. Both sides agree Steve deposited a $215,000 check in an account controlled by Jack, and defendants later returned $50,000 to Steve, but defendants refused to return the remaining $165,000. The second event includes allegations of improper bank transfers in South Korea and

promissory notes allegedly signed by plaintiffs. Defendants contend Steve made several unauthorized withdrawals from Hye's accounts in Korea and, as a result, Steve and Eun later executed a $200,000 promissory note in Hye's favor. Defendants argue they are entitled to keep the $165,000 received from Steve as an offset to Steve's unpaid debt on the promissory note.

**II. Findings of fact**.

*Deposit of $215,000 check*. Steve Young graduated from the Naval Academy in the Republic of Korea (South Korea) and served in that country's navy for six years. He then came to the U.S., where he ran several businesses, including a grocery market and a cleaning company. In 2010, Steve opened a sushi restaurant called Wasabi near downtown Wichita. He opened a second Wasabi in Wichita later in 2010.

In early 2013, Steve had accumulated $215,000 to purchase equipment and to pay operating expenses for a third Wasabi, which was to be located on Wichita's west side. Steve and Eun were having marital difficulties at the time. As a result, Steve was concerned that his wife might take the funds for the restaurant. He spoke to his brother-in-law, Jack, and the two agreed Steve should deposit the funds in the bank account of Across Construction Corporation, to which Jack had access. Steve explained the money was to fund the restaurant, and Jack said he would return it whenever Steve needed it. Steve obtained a cashier's check for $215,000 and deposited it in the Across Construction account at Bank of America in Wichita on March 4, 2013. Exh. 5.

Steve subsequently requested that Jack return the $215,000. Jack sent payments totaling $50,000. He refused to return the additional $165,000 that Steve had given him.

*Promissory notes.* Back in early 2010, according to plaintiffs' evidence, Steve and Jack discussed the possibility of Jack and Hye investing in the initial Wasabi restaurant. Jack said before he would invest, he would need a legal document. As a result, on May 6, 2010, Steve emailed Jack several copies of a proposed promissory note. *See* Exh. 2. The proposals were hand and type-written in Korean. Translated, one note states that Steve borrowed $200,000 from Hye to open the Wasabi Restaurant on East Douglas [the first Wasabi] and that until Steve pays off this debt, he gives Hye rights as first and primary creditor, and if the restaurant is sold Hye will receive her funds first. Exh. 2, p.3. A handwritten version by Steve, which was faxed by him to Jack and Hye, appears at Exh. 2, page SON013. The fax indicates it was sent on May 8, 2010.

Exhibit 6, a promissory note emailed by Steve to Jack on May 6, 2010, bears apparent signatures of Steve and Eun Young and of Hye Jin Son. A handwritten description of Steve and Eun as "Debtor[s]," and their apparent signatures dated March 4, 2013, appear at the bottom of Exhibit 6. A description of Hye as "Creditor" and her signature dated March 19, 2013, also appear at the bottom. Similar signatures appear on the bottom of the May 8, 2010, fax sent by Young. Defendants contend plaintiffs signed these notes on March 4, 2013, when Jack came from California to help Steve. Among other things, Jack bailed Steve out of jail after Steve was accused of domestic violence. Steve and Eun each testified they did not sign this or any other promissory note. They also testified that neither Jack nor Hye loaned them $200,000 or any lesser amount to construct a Wasabi restaurant.

3

Defendants' version of events was that Steve contacted Hye in April 2010, and told her she might be contacted by a bank inspector. According to her, Steve said he had had transferred funds out of her account without her permission and with the assistance of Hee Do Oh, a Korean bank employee. Steve and Hye both had accounts at Hana Bank in South Korea. Both of their accounts were managed by Hee Do Oh, who had known Steve since their days together in the navy. Hee also worked with Steve's wife Eun at Hana Bank. Hee knew Hye and Jack, having been introduced to them by Steve around the year 2000.

According to Hye, Steve told her Hee would get fired and the Wasabi restaurant would have trouble if she didn't say she had authorized the transfers. Hye testified that when the bank subsequently contacted her, she told them she had authorized the transfers. She testified Steve drafted the $200,000 promissory note as a result of having transferred these funds out of her account. She testified that when she found out about the $215,000 check Steve had deposited into the Across Construction account, she thought it was repayment for the funds taken. She testified she returned $50,000 of the $215,000 to Steve upon his request.

Hye conceded that receipts showing money transfers to Eun Young or Wasabi restaurant during the relevant time totaled at most $117,000, but she testified Steve made a promissory note for $200,000 because Jack had spent additional funds helping Steve, because defendants had suffered damages in a car accident, and because Steve felt guilty and wanted to make up for what he had done. Jack testified he came to Wichita at Steve's request to bail him out of jail and help him in April of 2013, and that

4

during that visit he obtained Steve and Eun's signatures on the May 2010 email promissory note.

Hee Do Oh testified at trial that the bank transfers which defendants claim were unauthorized withdrawals from Hye's account were in fact transfers of Steve Young's money. Hee also testified that Jack had contacted him after this lawsuit was filed and asked him to falsify documents stating that the money belonged to Hye. Hee said he initially did so but then regretted it and disclosed his actions. He identified the allegedly falsified documents as the "Details of Payment Order" pages SON005, SON007, and SON009 in Exhibit 1.

Sometime in 2010, Steve loaned Jack and Hye $80,000 for the purchase of a house for Jack and Hye's daughter (Steve's niece) in California. Jack and Hye subsequently paid back the $80,000 loan. When they paid it back, they said nothing about a promissory note or about Steve owing them money, although this occurred after Steve allegedly disclosed that he had taken money out of Hye's account and sent them the purported promissory note.

The credibility of all the witnesses at trial was difficult to assess, in no small part because of a language barrier. It was also difficult to determine due to unexplained gaps in the evidence. For example, Exhibit 19, the bank account statement of Across Construction, was redacted of all information except the $215,000 check deposited into the account on March 4, 2013. Yet a previously-filed copy of that statement (Dkt. 103-14) showed that on that same day, there was a $100,000 transfer out of the Across account to a California account, a $50,000 "agent assisted" transfer to a different account, and a

5

$9,500 cash withdrawal. On March 19, 2013, an additional transfer of $40,000 was made out of the Across account to the same California account. The balance in the Across account on March 1, 2013, just prior to these transactions, was a little over $3,000. None of these transactions were explained at trial. Clearly, something beyond a simple entrustment of funds occurred.

Another gap involved the Korean money transfers. Receipts in Exhibit 1 show transfers of $117,000 in 2009-2010 to Eun Young or Wasabi. Hye testified that an additional $50,000 transfer to Eun Young (Exh. 1 SON003) was "a different case" and did "not belong to this case." Dkt. 110 at 83. The plaintiffs claimed the source of the money for these transfers was Steve or Eun Young. Defendants asserted that the money was Hye Jin Son's. But neither side showed the ultimate source of the money or who could claim ownership of it. At least two transfers were made in Hye Jin Son's name (Exh. 1, SON001, SON002). Other transfers were apparently done in the name of "straw" customers to avoid limitations or regulations on money transfers. What purports to be a record of Hye's account transactions at the Hana Bank (Exhs. 9, 10, 11) includes entries probably reflecting four of the transfers, judging by the dates and amounts.[1] But even as to these transactions, the ultimate source or ownership of the funds was not explained. Records show deposits corresponding to these transfers were made into Hye's account on the same day or shortly before the transfers occurred. No evidence identifying the source of these deposits or showing Hye's ownership of the

---

[1] Someone has marked four particular transactions on Exhibits 9, 10, and 11. The transactions are listed in Korean won. No evidence was presented of the corresponding value in U.S. dollars, although use of historical exchange rate information indicates the withdrawals more or less correspond to the transfers in U.S. dollars listed on Exhibit 1 (SON002, 004, 006, 008).

funds was presented. When bank officials asked Hye about the transfers, she apparently said she had authorized them. Steve claims the money was his, but he never identified the source of the funds. Both sides thus acted to hide or obscure the nature of the transactions and the source of the funds, and there are no are no reliable records showing the source or ownership of the funds. It is thus uncertain whether the transferred funds belonged to or were entrusted to Steve, who perhaps funneled them through Hye's account, whether they represented an investment or contribution from unnamed family members or others, or whether they were in fact Hye's own funds or were contributed on her behalf.

The evidence concerning the promissory notes was equally unclear. The plaintiffs denied signing any of the promissory notes. Yet the signatures on the notes, which were apparently placed there three years after the notes were drafted, appear to be Steve and Eun's genuine signatures. At the same time, defendants failed to show the consideration and underlying debt for the promissory notes. Moreover, defendants' actions in taking an $80,000 loan from Steve, and then paying it back without any mention or reference to a $200,000 debt owed them by Steve, indicate that there was no such underlying debt.

Based on the evidence presented, the court finds that Steve Young's version of the deposit of the $215,000 check was more credible than Jack Son's version. Specifically, the court finds more likely than not that Steve entrusted the $215,000 to Jack with an agreement between them that Jack would return the money when Steve

requested it. Jack and Hye Son subsequently returned $50,000 upon request but failed to return the remaining $165,000. Defendants thus owe plaintiffs the $165,000 balance.

The court finds the evidence fails to show the ultimate source of the funds transferred from Korea to Eun Young and/or Wasabi. Even if the disputed $117,000 was in fact transferred out of Hye's account, the deposits putting the same amounts into her account indicate that someone was funneling money through the account. It is unclear from the evidence if those funds ever belonged to Hye Jin Son. Under the evidence presented, the court finds Steve and Eun were not legally indebted to Jack or Hye even assuming the $117,000 in transfers came out of her account. No showing has been made as to the source or ownership of those funds.

### III. Conclusions of law.

Plaintiffs claim defendants are liable to them for breach of contract. Dkt. 95 at 4. The elements of a breach of contract under Kansas law are: (1) the existence of a contract between the parties, (2) sufficient consideration to support the contract, (3) plaintiff's performance or willingness to perform in compliance with the contract, (4) defendant's breach of the contract, and (5) damages to plaintiff caused by the contract. *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083 (2013).

Plaintiffs have shown the existence of an agreement between Steve and Jack that Steve would provide funds of $215,000 to Jack and that Jack would return those funds upon demand. Plaintiffs have shown that they performed by providing the funds, that defendants breached the agreement by failing to return $165,000 of the money, and that plaintiffs suffered damages as a result. The court concludes that providing the funds to

Jack constituted sufficient consideration for the agreement or, alternatively, that Steve's reasonable reliance upon the promise of Jack to return the funds makes the promise enforceable.

When awarding contract damages, the goal is to put the nonbreaching party in the position he or she would have been in had the breach never occurred. *Peterson v. Ferrell*, 301 Kan. 99, 106, 349 P.3d 1269 (2015). A party asserting a claim for breach of contract has the burden of proving each and every element of the claim, including damages. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 789, 107 P.3d 1219 (2005). The court concludes plaintiffs have demonstrated that they suffered damages of $165,000 from the breach of contract. The court rejects plaintiffs' claim for additional damages for the rent they allegedly paid for the third Wasabi location. Plaintiffs have not produced their lease agreement or shown the precise legal obligation they had concerning the restaurant space, they have not shown the amount of lost rent with any reasonable certainty (citing only an unsupported page from an income statement and Steve Young's testimony) or that it was caused by defendants' actions, nor have they shown that such damages were reasonably foreseeable to the defendants. *Cf. Wolfe Elec., Inc. v. Duckworth*, 293 Kan. 375, 392, 266 P.3d 516 (2011) (one who claims damages for breach of contract must show with reasonable certainty the amount of damages suffered as a result of the breach).

Defendants claim a right to set off $165,000 allegedly owed by Steve against the above-described obligation. Set-off requires mutuality, meaning "that the same parties owe a sum of money to each other. * * * [T]he parties' judgments or debts must coexist,

*i.e.*, both must be determined, presently due, and owing at the time of the setoff." *Mynatt v. Collis*, 274 Kan. 850, 881, 57 P.3d 513 (2002). Defendants' claim fails this test, as they have not cited credible proof showing that Steve owed them a sum of money. Moreover, to the extent the claim for set-off is an equitable one subject to the discretion of the court, the court concludes that that it should be denied. The unexplained circumstances behind the transactions in this case and the way the parties dealt with other - as family members rather as than arms-length business associates - makes set-off inappropriate. *See Mynatt*, 274 Kan. at 881 ("equitable setoff is not a legal right, but is a matter of grace, and the question whether a setoff should be decreed rests in the sound discretion of the court"). Any question of reimbursement for unexplained family transactions should be resolved by the family.

**IT IS THEREFORE ORDERED** this 28th day of July, 2017, that plaintiffs Steve Young and Eun Young shall recover of the defendants Ki Ok Son and Hye Jin Son the sum of $165,000 on plaintiffs' claim for breach of contract. Plaintiffs' claim for conversion is denied as moot. Defendants' claim for set-off is denied. Defendants' motion for directed verdict (Dkt. 112) is denied.

    ___s/ J. Thomas Marten_____
    J. THOMAS MARTEN, JUDGE